# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 15-1011V
Filed: April 19, 2017
Published

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| AMRIT DHANOA, | * | |
| | * | |
| Petitioner, | * | Finding of Fact; Influenza ("Flu") |
| v. | * | Vaccine; Shoulder Injury Related to |
| | * | Vaccine Administration ("SIRVA"); |
| SECRETARY OF HEALTH | * | Adhesive Capsulitis; Location of |
| AND HUMAN SERVICES, | * | Vaccination; Special Processing Unit |
| | * | ("SPU") |
| Respondent. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Maximillian J. Muller*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Ann Donohue Martin*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON FACTS[1] AND SCHEDULING ORDER– SPECIAL PROCESSING UNIT

**Dorsey,** Chief Special Master:

On September 11, 2015, Amrit Dhanoa ("petitioner" or "Ms. Dhanoa") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*, (the "Vaccine Act" or "Program"). Petitioner alleges that she suffered an injury to her right shoulder, including adhesive capsulitis and shoulder injury related to vaccine administration ("SIRVA"), as a result of an influenza ("flu") vaccine she received on August 19, 2014. Petition at 1-2. The case was assigned to the Special Processing Unit ("SPU").

Prompting this fact ruling is a joint status report filed on March 20, 2017, requesting a written determination of whether the flu vaccine was administered in petitioner's left or right arm and whether the onset of petitioner's right shoulder pain occurred within forty-eight hours of petitioner's flu vaccination. After a review of the record as a whole, a fact hearing, and for the reasons set forth below, the undersigned finds by preponderant evidence that (1) Ms. Dhanoa received her August 19, 2014 flu vaccination in her right arm and (2) the onset of Ms. Dhanoa's right shoulder pain occurred within forty-eight hours of her flu vaccination.

---

[1] Because this unpublished order and ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

I.    **Procedural History**

In the petition filed on September 11, 2015, Ms. Dhanoa asserts that she received a flu vaccine on August 19, 2014, at CVS Pharmacy in Richardson, Texas. Petition at 2, ¶3. The statement of completion was also filed on September 11, 2015, signifying that petitioner believed that all relevant medical records had been filed. *See* Statement of Completion (ECF No. 2). A notice of assignment to Chief Special Master Nora Beth Dorsey as an SPU case was entered on September 14, 2015. *See* Notice (ECF No. 7). An initial status conference was set for October 26, 2015.

On December 9, 2015, respondent filed a Rule 4(c) Report asserting that petitioner's request for entitlement to compensation under the Vaccine Act be denied. Respondent's Report at 1 (ECF No. 14). On January 15, 2016, the undersigned ordered petitioner to file additional medical records, an updated exhibit list, and a second statement of completion. *See* Scheduling Order at 1 (ECF No. 15). Petitioner was also ordered to file an affidavit to explain any unavailable medical records. *Id.* Petitioner filed her CVS vaccination record on February 16, 2016, an affidavit of Petitioner on February 26, 2016, additional medical records and an exhibit list on February 29, 2016, and a statement of completion on February 29, 2016. *See* Petitioner's Exhibits ("Pet. Exs.") 10-12 (ECF Nos. 16-18); Exhibit List (ECF No. 19); Statement of Completion (ECF No. 20).

A status conference was held on March 29, 2016. The parties were ordered to file a status report regarding settlement discussions. *See* Scheduling Order (ECF No. 21). The joint status report filed on May 2, 2016 indicated that the parties were unclear about whether the case could be resolved by settlement, but the parties requested an extension of time to continue to pursue settlement discussions. *See* Joint Status Report (ECF No. 22). A joint status report was filed on May 26, 2016, in which the parties reported that they believed "resolving [the] case by settlement [was] not feasible." *See* Joint Status Report (ECF No. 24).

On June 30, 2016, the undersigned convened a telephonic status conference pursuant to Vaccine Rule 5 to share with the parties her tentative findings and conclusions. The Rule 5 Scheduling Order filed on July 5, 2016 presents the undersigned's tentative findings and conclusions.[2] *See* Rule 5 Scheduling Order at 2-3 (ECF No. 25). A joint status report filed on July 27, 2016 stated that "the parties have discussed this case in detail following the Rule 5 Conference and believe a fact hearing is necessary to reach a resolution." Joint Status Report (ECF No. 26).

A fact hearing occurred before the undersigned in Dallas, Texas on December 8, 2016. After the hearing, petitioner was ordered to file outstanding medical records. Post-Hearing Order

---

[2] The undersigned's preliminary findings and conclusions are as follows: (1) Petitioner received the flu vaccination alleged as causal in her right (injured) arm; (2) Petitioner's onset was immediate; (3) Petitioner's failure to mention her shoulder pain to her primary care physician on August 21, 2014 or her dermatologist on August 28, 2014 and September 30, 2014 was reasonable; and (4) Petitioner's clinical course and diagnosis was consistent with a SIRVA.

(ECF No. 31). She filed the additional medical records on January 10, 2017, February 10, 2017, and February 22, 2017.[3]

On March 20, 2017, the parties filed a joint status report requesting a written determination regarding whether the flu vaccine was administered in petitioner's left or right arm and whether the onset of petitioner's right shoulder pain occurred within forty-eight hours of petitioner's flu vaccination. Status Report (ECF No. 41). The undersigned now issues this fact ruling.

## II.     Factual History

Ms. Dhanoa's medical history before her 2014 flu vaccination is significant for diabetes, heart problems, and rash. On June 14, 2013, Ms. Dhanoa visited her cardiologist, Dr. Agrawal, with complaints of weakness, fatigue, dizziness, atypical abdominal discomfort, and palpitations. Pet. Ex. 5 at 9. Ms. Dhanoa "was hospitalized approximately 3 years ago with palpitations and atypical chest pain." *Id.* On June 4, 2014, Ms. Dhanoa called her cardiologist due to her experience of waking up with chest pressure and sobbing at night. *Id.* at 8. On August 13, 2014, Ms. Dhanoa visited Dr. Steinmetz with complaints of a spreading rash. Pet. Ex. 7 at 5.

On August 19, 2014, Ms. Dhanoa received a flu vaccine at CVS Pharmacy in Richardson, Texas. Pet. Ex. 1 at 6; *see also* Pet. Ex. 10. The vaccination record indicates the vaccination was administered by intramuscular injection but does not indicate the injection site. *Id.* Ms. Dhanoa saw her primary doctor, Dr. Naghmi, on August 21, 2014 for the purpose of receiving treatment for her rash. Pet. Ex. 2 at 7. The medical record does not mention any complaints of right arm or shoulder pain. *Id.* Instead, the medical record states that Ms. Dhanoa "denies joint and muscle pain" and "ROM intact for spine and extremities." *Id.*

On August 28, 2014, Ms. Dhanoa saw her dermatologist, Dr. Aponte, to receive treatment for her rash which was worsening and "ha[d] been occurring for 1 year." Pet. Ex. 8 at 7. Ms. Dhanoa followed up with Dr. Aponte about her rash on September 30, 2014. *Id.* at 6. The medical records from these two visits do not mention Ms. Dhanoa's right shoulder pain. *Id.*

On October 31, 2014, Ms. Dhanoa visited her primary doctor, Dr. Naghmi, complaining of pain in her right shoulder. Pet. Ex. 2 at 6. The medical record states that Ms. Dhanoa had "joint and muscle pain" and that "ROM [is] mildly painful for right shoulder." *Id.* The medical record also states that Ms. Dhanoa had right shoulder pain for six weeks. *Id.*

On November 24, 2014, Ms. Dhanoa visited Dr. Jeffrey Klein at Orthopedic & Sports Medical Center due to right shoulder pain. Pet. Ex. 4 at 16. Ms. Dhanoa completed a medical

---

[3] On January 10, 2017, petitioner filed medical records from Procare Medical Center and billing records from Orthopedic & Sports Medicine Center. *See* Pet. Exs. 13-14 (ECF No. 34). In a status report filed the same day, petitioner indicated Orthopedic & Sports Medicine Center had mistakenly provided petitioner's billing records instead of her medical records. Status Report (ECF No. 35). Petitioner further indicated that she expected to receive and file the medical records from Orthopedic & Sports Medicine Center within 30 days. *Id.* On February 10, 2017, petitioner filed these medical records and a statement of completion. *See* Pet. Ex. 15 (ECF No. 37); Statement of Completion (ECF No. 38). Petitioner also filed additional medical records from Orthopedic & Sports Medicine Center on February 22, 2017. *See* Pet. Ex. 16 (ECF No. 40).

history information form during her visitation. *Id.* at 7-8. In response to a question which asked Ms. Dhanoa if she intends to make any claims, Ms. Dhanoa stated, "if it does not go away after 6 months till Jan 15 or till March 15." *Id.* at 8. The medical record states that Ms. Dhanoa had a "three-month history of decreasing range of motion, increasing pain in the right shoulder," and that her pain "started after she got an influenza shot in August." *Id.* at 16. Dr. Klein diagnosed Ms. Dhanoa with adhesive capsulitis and prescribed anti-inflammatory medication. *Id.* He also wrote a physical therapy prescription for Ms. Dhanoa. *Id.* at 23.

On December 15, 2014, Ms. Dhanoa visited her orthopedist for a follow up office visit. *Id.* at 15. The medical record states that Ms. Dhanoa "has been taking the anti-inflammatory medicines" and "going to therapy." *Id.* The evaluation states that Ms. Dhanoa made slight improvements since her last evaluation. *Id.*

On December 17, 2014, Ms. Dhanoa visited her cardiologist, Dr. Agrawal, and mentioned her flu shot. Pet. Ex. 5 at 5. The medical record states that Ms. Dhanoa received "a Flu shot in her right shoulder about 2-3 weeks ago and since then, she has experienced severe pains in the shoulder and arm. As well as back." *Id.*

On December 29, 2014, Ms. Dhanoa had a follow up visit with her primary doctor, Dr. Naghmi, regarding a few complaints, one of them being the pain in her right shoulder. Pet. Ex. 2 at 5. She saw Dr. Naghmi again on January 5, 2015 regarding health complaints, but there is no mention of right shoulder pain in the record from that visit. *Id.* at 4.

On January 9, 2015, Ms. Dhanoa had a follow up visit with her orthopedist and was advised to continue physical therapy and home rehab. Pet. Ex. 4 at 14. Ms. Dhanoa saw her orthopedist again on February 10, 2015, and the medical record notes that "[s]he is not making much progress." *Id.* at 13. On April 24, 2015, she was still experiencing pain in her right shoulder and having trouble sleeping. *Id.* at 12. Ms. Dhanoa received an injection during this visit, and was advised to continue her anti-inflammatory medicine and therapy. *Id.* On May 13, 2015, Ms. Dhanoa began her physical therapy at Rehab Management. Pet. Ex. 12 at 32. On June, 18, 2015, Ms. Dhanoa followed up with Dr. Klein, who stressed the importance of physical therapy. Pet. Ex. 4 at 11. Ms. Dhanoa's last formal physical therapy session was on August 13, 2015. Pet. Ex. 12 at 3. She was discharged from physical therapy for failure to schedule future appointments. *Id.* at 2.

### III.   Parties' Arguments

In her Rule 4, respondent argues that petitioner is not entitled to compensation. (ECF No. 14). The respondent notes that the vaccination record is silent as to the specific location of the vaccine. *Id.* at 2, 5. Respondent argues that petitioner's onset was not immediate. To support respondent's argument, respondent notes that petitioner's examination by her primary doctor on August 21, 2014 showed a normal range of motion in all extremities. *Id.* at 5. Respondent also points out that petitioner did not complain of shoulder pain until October 31, 2014, when she mentioned her pain began six weeks prior to this visit. *Id.* Respondent adds that the medical report from petitioner's visit to her cardiologist on December 17, 2015 states that petitioner received her flu shot and experienced pain about two to three weeks prior to visit. *Id.* at 6.

Petitioner has no personal or family history of any shoulder injuries. Petition at 1, ¶2. In her affidavit, she alleges that she felt severe pain in her right shoulder immediately after her flu vaccination on August 19, 2014. Pet. Ex. 11 at 1, ¶4. She took Tylenol after her flu vaccine for pain relief. Pet. Ex. 11 at 1, ¶5. Petitioner went to her primary care physician, Dr. Naghmi, on August 21, 2014 for the purpose of treating a spreading rash and although "[her] right shoulder was sore" she "thought it was normal pain from vaccination and did not think to mention it to [her] doctor." *Id.* at 1, ¶6. To provide additional clarification regarding her delay complaining of shoulder pain, Ms. Dhanoa stated that she "ha[s] had vaccines before and experienced pain, [and] I thought this was no different." *Id*. Ms. Dhanoa did not mention her shoulder pain to her dermatologist on August 28, 2014 and September 30, 2014, reasoning that she was treating the pain on her own with Tylenol and that "Dr. Aponte is a dermatologist and was not the doctor [she] would see for a shoulder injury." *Id.* at 1-2, ¶7.

Ms. Dhanoa also clarified that her October 31, 2014 appointment, where the medical record notes that her right shoulder pain began six weeks prior, "was an estimation regarding the onset of the pain," and "[t]he pain in [her] right shoulder began after receiving the influenza vaccination and slowly got worse over the following weeks." *Id.* at 2, ¶8; *see also* Transcript of Proceedings ("Tr.") at 23 (ECF No. 33). In regard to Ms. Dhanoa's December 12, 2014 visit to her cardiologist, Ms. Dhanoa clarified that her doctor's note, which states that she received her flu vaccination 2-3 weeks prior, is an incorrect timeline because she "received [her] flu vaccination 2-3 months prior to this visit on August 19, 2014." Pet. Ex. 11 at 2, ¶12.

Ms. Dhanoa testified that her shoulder pain became increasingly painful over time after she received her flu shot on August 19, 2014. Her pain level started at a level five out of ten and increased as high as 10.5. *See* Tr. at 10, 18, 24, 29. She testified that her pain limited her activities of daily life such as Zumba, swimming, household work, opening doors, and getting dressed and combing her hair. Tr. at 29, 44. At the hearing, Ms. Dhanoa demonstrated her limitations to her range of motion. *See* Tr. at 81-82.

## IV.   Discussion

### A.  Applicable Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa–13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed.Cir.1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

### B. Evaluation of the Evidence

Here, the undersigned finds that there is preponderant evidence to support Ms. Dhanoa's claim that the flu vaccine she received on August 19, 2014, was administered in her right arm. The undersigned bases her finding on petitioner's affidavit[4] and consistent entries in the medical records.[5]

The undersigned also finds that there is preponderant evidence to support that the onset of Ms. Dhanoa's right shoulder pain occurred within forty-eight hours of her August 19, 2014 flu vaccination. Because this type of injury, SIRVA, is rare and not commonly known to the general public, it is not unusual to see the lack of documentation that exists in petitioner's case. The undersigned finds petitioner's affidavit and testimony to be credible. Petitioner's clinical course and diagnosis is consistent with a SIRVA. Additionally, the affidavit and testimony submitted by petitioner offer corroboration of her claim that she experienced a progressive increase of right shoulder pain after receiving her flu vaccine on August 19, 2014.

Petitioner's failure to mention her shoulder pain to her primary care physician on August 21, 2014, or her dermatologist on August 28, 2014 and September 30, 2014 is reasonable. Based on her experience in the Program, the undersigned notes that it is not uncommon for a petitioner to delay seeking treatment for a shoulder injury after vaccination. Petitioner delayed seeking treatment for her shoulder pain by self-treating with Tylenol and hoping that her pain would cease. *See* Pet. Ex. 11 at 1, ¶5. It is reasonable that petitioner did not mention the pain she felt to her primary care provider just a few days after vaccination or her dermatologist during two subsequent visits. *See* Pet. Ex. 2 at 7; Pet. Ex. 8 at 6-7. The entries are not helpful but also are not inconsistent with petitioner's assertions. Petitioner visited her primary care provider on August 21, 2014 due to a spreading rash and did not mention her right shoulder pain because she believed the soreness in her right shoulder from the flu vaccine was normal. *See* Pet. Ex. 11 at 1, ¶6. Petitioner's visits with her dermatologist on August 28, 2014 and September 30, 2014 were for the purpose of petitioner's rash, and petitioner did not mention her right shoulder pain due to her dermatologist's limited specialty. It is reasonable that petitioner would not see her dermatologist for a shoulder injury. *See* Pet. Ex. 11 at 2, ¶7; Tr. at 16-17. The undersigned credits the explanation given by petitioner her in affidavit that she felt severe pain after injection but attributed it to a normal outcome following vaccination and thus, did not seek treatment sooner. *See* Pet. Ex. 11 at 1, ¶¶ 4-6.

Petitioner's medical record from her December 17, 2014 visit with her cardiologist states that petitioner received her flu shot two to three weeks ago and experienced severe shoulder and arm pain since her flu shot. Pet. Ex. 5 at 5. The incorrect onset of petitioner's shoulder pain reported in the record from petitioner's cardiologist is the result of petitioner's failure to give an accurate history or the cardiologist's erroneous notation of "weeks" instead of "months." By

---

[4] The affidavit states that petitioner "received the influenza vaccination in [her] right arm" and "[i]mmediately following the vaccination, [she] felt severe pain in [her] right shoulder." *See* Pet. Ex. 11 at 1, ¶¶ 3-4.

[5] For example, a medical record from Orthopedic & Sports Medicine Center states that petitioner visited with "about three-month history of decreasing range of motion, increasing pain in the right shoulder" and that "[this issue] started after [petitioner] got an influenza shot in August." Pet. Ex. 4 at 16. A medical record from petitioner's cardiologist states that petitioner "received a flu shot in her right shoulder." Pet. Ex. 5 at 5.

petitioner's own admission, she often was not exact when providing her medical history. Tr. at 23. On October 31, 2014, petitioner complained of "pain in right shoulder for 6 weeks." *See* Pet. Ex. 2 at 6. Petitioner agreed this entry was undoubtedly erroneous, suggesting she was providing an approximate time frame and describing a point when the pain worsened. Tr. at 23. The undersigned finds these incorrect entries regarding the onset of petitioner's pain are not sufficient to counter entries establishing petitioner's pain began after her flu vaccination. *See, e.g.*, Pet. Ex. 4 at 16. The undersigned finds petitioner's assertion that she experienced pain immediately following vaccination which slowly worsened over time to be credible. *See* Pet. Ex. 11 at 2, ¶8; Tr. at 23.

### V.     Conclusion

Thus, the undersigned finds, based on the record as a whole, that petitioner received a flu vaccine in her right arm on August 19, 2014, as alleged in the petition. The undersigned finds, based on the record as a whole, that onset occurred within forty-eight hours of petitioner's flu shot on August 19, 2014.

The parties are encouraged to consider an informal resolution of this claim. **Petitioner shall file a joint status report by no later than <u>Friday, May 19, 2017</u>, updating the court on the status of the parties' settlement discussions.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u><br>
Nora Beth Dorsey<br>
Chief Special Master